# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| NANCY BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NUMBER: |
| ) | |
| WAL-MART INC. ) | |
| ) | |
| ) | **JURY DEMAND** |
| ) | |
| Defendant ) | |

## COMPLAINT

### I. INTRODUCTION

1. This is an action alleging disability discrimination and retaliation in violation of Title I of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 et. seq., including 42 U.S.C. § 12203 (The anti-retaliation provision of the ADA). Plaintiff seeks full make whole relief, including compensatory and punitive damages and requests a jury trial pursuant to 42 U.S.C. § 1981a.

### II. JURISDICTION AND VENUE

2. Plaintiff believes that this Court has jurisdiction in accordance with 28 U.S.C. § 1331, 29 U.S.C. §2617, 28 U.S.C. § 2201 and 2202, and 42 U.S.C. § 12133.

3. The unlawful employment practices alleged herein below were committed by the Defendant within Shelby, Alabama. Venue is proper pursuant to 28 U.S.C. § 1391and 42 U.S.C. § 2000e-5(g).

4. Plaintiff has fulfilled all conditions precedent to the institution of this action including those statutory requirements under Title I of the ADA. Plaintiff timely filed her charge of discrimination within 180 days of occurrence of the last discriminatory act. Plaintiff also timely filed this complaint within 90 days of the receipt of a Notice of Right To Sue issued by the Equal Employment Opportunity Commission.

III. **PARTIES**

5. Plaintiff, Nancy Brown (hereinafter "Brown" or "Plaintiff'), is a female citizen of the United States and a resident of the State of Alabama.

6. At all times relevant, Plaintiff was a qualified individual under the Americans with Disabilities Act in that she had physical impairments which substantially limited one or more of her major life activities and/or was perceived as having a disability which substantially limited her major life activities and/or had a history of having such disabilities. 42 U.S.C. § 12102, 42 U.S.C. § 12131, 29 U.S.C.

§ 706.

7. Defendant, Wal-Mart Stores East, LP, (hereinafter "Defendant"), is a domestic company doing business in Shelby County, Alabama, and employs 15 or more employees.

8. The Defendant is an employer pursuant to 42 U.S.C. § 12111(5); and is an employer within the meaning of 42 U.S.C. § 2000e(a) and (b). At all times relevant to this action the Defendant has employed at least fifteen (15) or more employees.

IV. **FACTUAL ALLEGATIONS**

9. Plaintiff began working with Wal-Mart at its location in Pelham, Alabama in February 2020.

10. On July 29, 2020, Plaintiff was involved in an automobile accident. During the accident, Plaintiff suffered severe injury to her ankle and lower leg.

11. On July 30, 2020, surgery was performed on Plaintiff to repair her injury, which included a right distal tibia fracture. During the surgery, a plate and multiple screw/pins were required.

12. The surgery required the Plaintiff to be non-weightbearing for many months and she was also unable to drive for many months. Additionally, she required crutches/walker for ambulation.

13. Plaintiff's doctor approved her return to work on December 3, 2021, with restrictions that she be allowed to use a stool to sit as needed, and that she be allowed an extra fifteen (15) minute break.

14. Defendant told Plaintiff that she could return to work after the holidays.

15. Plaintiff returned to work at the Pelham store on or about January 3, 2021 as a cashier.

16. On January 26, 2021, Sedgwich Claims Management Services, Inc., Defendant's agent, formally approved Plaintiff's use of a stool as an accommodation for her disability from January 6, 2021 to February 16, 2021. Plaintiff then transferred to Defendant's Wal-Mart store in Alabaster because it was closer to where she lived.

17. However, when Plaintiff reported to work at the Alabaster store, she was sent home and told that they did not show her in the register.

18. On or about February 15, 2021, Plaintiff started working at the Alabaster store as a cashier.

19. Plaintiff spoke with Jacob (LNU), who was the Front End Manager, about her accommodation and need for a stool. She was not given a stool until several days later.

20. On or about February 17, 2021, Plaintiff received another return to

work status which stated that she should continue the same restrictions (extra break and a stool) through July 27, 2021. She immediately submitted this continuance of her restrictions to Sedgwich.

21. After several days of using the stool as a cashier at the Alabaster store, Winn (LNU), who was with human resources at the Alabaster store, began to complain about Plaintiff's use of the stool. Winn questioned how Plaintiff got the original accommodation of the stool, stating that Defendant didn't let the cashiers use them ... saying "we don't do that". Plaintiff and Winn also discussed Plaintiff's restrictions ending on July 27, 2021.

22. On February 23, 2021, Plaintiff was assigned to work as a temperature taker where she took employees' temperature in the back of the store.

23. All temperature takers were employees who were allowed to sit.

24. Also on February 23rd, Winn and Jacob told Plaintiff that she needed to take leave until July 27, 2021.

25. Plaintiff asked about an accommodation of being assigned regularly as a temperature taker so that she could sit (as an accommodation) during the remainder of her restriction period. Plaintiff was told that all of those positions were filled (even though the Alabaster store had a posted notification for that position.).

26.     On February 23, 2021, Plaintiff was notified by Sedgwich that only her extra break <u>restriction was</u> approved as an accommodation.  She was informed that "management has been advised of this determination and has been instructed to finalize with you the details of this approval."  The approval applied from January 6, 2021 to July 27, 2021.  Plaintiff resubmitted the February 17, 2021 doctor's restriction stating that she needed to use a stool through July 27, 2021.

27.     At the direction of management employees Winn and Jacob, Plaintiff requested a leave of absence (beginning February 24, 2021.)

**28.**     On or about May 29, 2021, Plaintiff received an April 26, 2021 letter notification from Sedgwick formally notifying her that her request for a leave of absence had been denied.  The notification stated that her leave was denied due to Sedgwick not receiving the Medical Information/"Certification of healthcare provider" form needed for her leave before the medical due date - despite Plaintiff having submitted her doctor's restrictions of an extra break and use of a stool through July 27, 2021 on at least two occasions prior to her leave request.

29.     In mid to late July 2021, Plaintiff called the store several times attempting to talk to a manager about returning to work as her restrictions would be lifted on July 27, 2021.  She was always placed on hold and no manager ever spoke with her or returned her call.

30. On July 28, 2021, Plaintiff went to the Alabaster store, but was unable to speak with any manager.

31. Also on July 28, Sedgwick notified Plaintiff that her accommodation request had been denied because their records indicated that she was no longer employed by the Defendant.

32. Plaintiff believes that her return to work was delayed, that she was not allowed to work, and that she was subsequently terminated in violation of Title I of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 et. seq., including 42 U.S.C. § 12203 (The anti-retaliation provision of the ADA).

33. Upon information and belief, similarly situated employees who do not suffer from a disability, are not perceived as suffering from a disability, and/or do not have a record of a disability are not, and were not, subjected to termination under similar circumstances.

34. Upon information and belief, similarly situated employees who had not requested accommodations under the ADA are not, and were not, subjected to termination under similar circumstances.

35. The Defendant intentionally and maliciously discriminated against the Plaintiff at least in part on the basis of her disability, perceived disability and/or

history of a disability by denying her reasonable accommodations, by terminating and rehiring her, and by again terminating her employment.

36. In retaliation for exercising her rights under the ADA, the Defendant subjected the Plaintiff to unlawful retaliation including, but not limited to, denying her reasonable accommodations, and by terminating her employment.

37. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein, and this suit for a declaratory judgment, backpay, an injunction, and compensatory and punitive damages is her only means of securing adequate relief.

38. Plaintiff is suffering and will continue to suffer irreparable injury from the Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

V. **CAUSES OF ACTION**

**COUNT I - DISCRIMINATION UNDER THE ADA**

39. Plaintiff re-alleges and incorporates by reference the foregoing paragraphs above with the same force and effect as if fully set out in specific detail hereinbelow.

40. At all times relevant, Plaintiff was a qualified individual under the ADA because of her inability to stand for extended periods and/or perceived disabilities, and/or history of a being a person with a disability.

41. At all times relevant, Plaintiff was a person with a disability, had a history of disability and/or was perceived as disabled pursuant to 42 U.S.C. § 12102.

42. Despite the Plaintiffs disabilities, with reasonable accommodations, the Plaintiff was able to perform the essential functions of her job.

43. Plaintiff was subjected to unlawful discrimination by the Defendant based on her disability and/or perceived and/or record of a disability including, but not limited to, being denied reasonable accommodations, by being subjected to disparate treatment, and by terminating her employment.

44. At the time of this unlawful activity the Defendant had knowledge that the Plaintiff suffered from an actual or perceived disability and/or had a record of a disability.

45. As set out in detail above, thereafter the Defendant unlawfully retaliated against the Plaintiff in that she was denied reasonable accommodations and was terminated from her employment.

46. The Defendant intentionally, willfully and with reckless indifference discriminated and retaliated against the Plaintiff in the terms, conditions,

benefits of her employment including, but not limited to, her termination, wages, benefits, discipline, and the responsibilities and duties of her employment because of her status as a person with a disability and/or a person with a perceived disability.

47. Defendant, by its discriminatory treatment of the Plaintiff, has intentionally, willfully, with deliberate indifference and without justification deprived Plaintiff of her federally protected rights, as described herein. This deprivation violates Plaintiffs rights under the Americans with Disabilities Act.

48. The Defendant's conduct as described above caused the Plaintiff emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation.

49. The Plaintiff seeks to redress the wrongs alleged herein in this suit for lost wages, lost benefits, an injunction and a declaratory judgment. The Plaintiff is now suffering and will continue to suffer irreparable injury from the Defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

### COUNT II - INTERFERANCE WITH ADA

50. Plaintiff adopts and incorporates paragraphs 1-49 above.

51. Defendant's management interfered with Plaintiff's rights under the ADA by telling her that sitting on a stool was not an accommodation that Defendant would provide and by failing to approve her use of a stool at the Alabaster store. Defendant also interfered by telling Plaintiff her accommodation was not approved.

### COUNT III RETALIATION UNDER THE ADA

52. Plaintiff adopts and incorporates paragraphs 1-51 above.

53. Defendant retaliated against Plaintiff by refusing to rehire her after her need for accommodation expired despite her repeated efforts to obtain reemployment after she no longer needed an accommodation.

## VI. PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1. Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the Defendant are violative of the rights of the Plaintiff, as secured by the Americans with Disabilities Act;

2. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate the ADA.

3. Enter an Order requiring the Defendant to make Plaintiff whole by awarding Plaintiff reinstatement, back-pay (plus interest), lost benefits, and compensatory, punitive, and nominal damages.

4. Plaintiff further prays for such other and further relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorney's fees and expenses incurred by this litigation.

5. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged in this suit, and this action for injunctive, declaratory and other relief is her only means of securing adequate relief.

Respectfully submitted,

*s/Russell W. Adams*
Russell W. Adams
Alabama State Bar Number: 3760-A62R
WIGGINS, CHILDS, PANTAZIS, FISHER &GOLDFARB
301 19th Street North
Birmingham, Alabama 35203
(205) 314-0500

**PLAINTIFF HEREBY DEMANDS TRIAL BY STRUCK JURY.**

Plaintiff requests this Honorable Court to serve via certified mail upon the Defendant the following: Summons, Complaint.

**Defendant's Registered Agent**

12

CT Corporation System
ATTN: Walmart Inc.
818 West Seventh Street, Suite 930
Los Angeles, CA 90017

                                  *s/Russell W. Adams*
                                  **OF COUNSEL**